UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SCOTT ALAN COLLINS,

               Plaintiff,                         Case No. 2:18-cv-53

v.                                          Hon. Gordon J. Quist
                                                      U.S. District Judge

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

_____/

## **REPORT AND RECOMMENDATION**

### **Introduction**

Plaintiff Scott Alan Collins alleges that he stopped working in September of 2014, after he suffered a nervous breakdown. (ECF No. 13, PageID.697.) Collins filed an application for disability insurance benefits (DIB) and supplemental security income (SSI), alleging that he became disabled on September 2, 2014, due to blindness in one eye, human immunodeficiency virus (HIV), and anxiety. (ECF No. 7-5, PageID.193-208.) In addition, Collins indicates that he has been unable to find a social work position after a 1997 abuse allegation arising from his employment as a certified nurse's aide. (ECF No. 13, PageID.696.) Collins states that because of poor decision making, he ignored and failed to contest the allegation. (*Id.*)

The Social Security Administration rejected Collins's application for DIB and SSI, and Collins requested a hearing. (ECF No. 7-4, PageID.150-151.) The Administrative Law Judge (ALJ) found that Collins could perform jobs that existed in significant numbers in the national economy given Collins's residual functional

capacity (RFC), and therefore concluded that Collins was not disabled under the Social Security Act.  (ECF No. 7-2, PageID.42-54.)  The Appeals Council denied Collins's request for review.  (*Id*. at PageID.22-25.)

On appeal, Collins asserts that the ALJ (1) failed to fully consider his HIV and mental health condition and failed to consider Listings 14.00 (Immune System Disorders) and 12.04 (Affective Disorders), (2) failed to afford the proper weight to the opinions of Dr. Wallace and psychologist Tonya Acker-Richards, (3) failed to properly consider his RFC in determining whether he was able to perform work, and (4) failed to consider both his passive nature when seeking medical treatment and his poor legal representation during the administrative proceedings.  Upon review of the record, I respectfully recommend that the Court affirm the decision of the ALJ and dismiss this case.

## Standard of Review

Review of an ALJ's decision is limited to two issues: (1) "whether the ALJ applied the correct legal standards," and (2) "whether the findings of the ALJ are supported by substantial evidence."  *Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 420 (6th Cir. 2014) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); *see also* 42 U.S.C. § 405(g).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and

the Commissioner's findings are conclusive provided they are supported by substantial evidence. 42 U.S.C. § 405(g).

Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole, and take into account whatever evidence in the record fairly detracts from its weight. *Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984) (citations omitted). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).

## Procedural Posture

On September 9, 2014, Collins applied for DIB and SSI alleging disability due to HIV, impaired vision, and depression. Collins alleged a disability date of September 4, 2014, which is the date he stopped working as a bakery manager and bagger at a grocery store. Collins's application was initially denied, and he subsequently requested an administrative hearing before an ALJ. The ALJ held a

hearing on April 28, 2017, at which time Collins was represented by counsel. (ECF No. 7-2, PageID.60-96.)

On July 17, 2017, the ALJ affirmed the Social Security Administration's initial denial of benefits. (*Id*. at PageID.42-54.) The ALJ's decision became the agency's final decision on June 11, 2018, when the Appeals Council denied Collins's request for review. (*Id*. at PageID.22-25.)  Collins then filed this appeal, seeking judicial review of the agency's final decision denying his request for disability benefits.

## Background

Collins was born in 1968.  (*Id*. at PageID.65.)  In December of 2004, Collins received a bachelor's degree in sociology.  (*Id*. at PageID.68-69.)  During 2013 and 2014, Collins worked in a grocery store as a bakery manager, bagger, and stocker. (*Id*. at PageID.71-72.)  Collins also has experience as a bartender and kitchen worker at a senior center.  (*Id*. at PageID.73.)

Collins's vision problem is his most disabling condition. (*Id*. at PageID.74.)  As a toddler, Collins injured his right eye and is legally blind.  (*Id*.)  He can see colors and shapes.  (*Id*.)  He has eyeglasses to correct vision in his left eye for reading. (*Id*. at PageID.75.) He experiences double vision but indicates it really does not bother him. (*Id*.)

Collins describes HIV as his next most severe medical condition.  (*Id*. at PageID.76.)  Collins agrees that his condition is controlled by medication when he is compliant.  (*Id*. at PageID.77.)  Side effects of the medication include diarrhea up to

twice per day. (*Id*.)  Imodium or Kaopectate help alleviate those symptoms.  (*Id*. at PageID.78.)

Collins also suffers from depression.  Collins indicates that his depression comes from anger and his inability to express himself. (*Id*. at PageID.81.)  He believes that he was not treated fairly at the grocery store.  (*Id*.)

During his hearing, Collins described an active lifestyle that included walking, biking, cooking, and reading. (*Id*. at PageID.80, 87.)  Collins has a driver's license, visits his father daily, and assists him with cleaning and chores.  (*Id*. at PageID.83.)  Collins attends Alcoholics Anonymous (AA) meetings.  (*Id*.)   He is also a long-time member of his church choir.  (*Id*. at PageID.84.)

During April of 2014, Collins had a physical examination at Marquette General Family Medicine.  (ECF No. 7-7, PageID.274-277.)  Dr. Bo M. Rowan, D.O., reported that Collins denied depression or anxiety.  Dr. Rowan noted that Collins's right eye gazes to the right and his HIV condition was asymptomatic.  (*Id*. at PageID.275.)

In June of 2014, Collins's infectious diseases physician, Dr. John Wallace, M.D., reported that Collins started a new job at Super One Foods in the deli and bakery departments.  (ECF No. 7-10, PageID.486.)  Dr. Wallace reported that Collins was doing well with asymptomatic HIV infection status.  (*Id*.)

Tonja Acker-Richards, M.A., L.L.P., saw Collins for anxiety and depression on July 22, 2014.  (ECF No. 7-10, PageID.510-513.)  Collins explained that he had lost his job as a nurse's aide when he failed to defend himself after an incident in the 1990s.  Collins reported his vision problems and HIV status.  Collins indicated that

he had difficulty dealing with authority and that he was being treated poorly at the grocery store.  He was moved to the deli department and was worried about cutting himself while at work.  Acker-Richards diagnosed Collins with bipolar disorder (provisional) and general anxiety disorder, and noted that dependency/personality issues should be ruled out.  Ackers-Richards recommended focused therapy to reduce anxiety and would consider a referral for medication.  (*Id*. at PageID.513.)

Acker-Richards filled out a Mental Impairment Questionnaire on October 24, 2014.  (*Id*. at PageID.530-531.)  Acker-Richard diagnosed Collins with bipolar disorder (mixed recurrent) and dependent personality disorder.  (*Id*. at PageID.530.) Collins symptoms included fear of conflict and social anxiety.  (*Id*.)  In addition, Acker-Richards checked boxes that indicated that Collins had slight, moderate, marked, or extreme limitations in his ability to work.  (*Id*. at PageID.531.)

Dr. Wallace examined Collins on October 21, 2014.  (*Id*. at PageID.532-534.) Dr. Wallace noted that Collins quit his job on September 2, after his hours were cut and he was treated poorly.  (*Id*. at PageID.533.) Collins was seeing a psychologist for anxiety and depression and was getting over a cold.  (*Id*.)  Dr. Wallace noted that Collins has asymptomatic HIV, an anxiety disorder, and depression.  (*Id*.)  On November 4, 2014, Dr. Wallace noted that Collins was doing well with depression while taking the medication Celexa, and that he was trying to get disability after quitting his job.  (*Id*. at PageID.535.)  Collins had occasional suicidal thoughts, but no plans.  (*Id*.)

Dr. Wallace noted on November 9, 2014, that Collins's viral load increased to 307 from 176 in June, and that a viral load of 200 is considered a detectable amount. (*Id.* at PageID.538.)  On November 19, 2014, Dr. Wallace expressed concern over the increase in viral load and encouraged Collins to take his medication. (*Id.* at PageID.540.)[1] Dr. Wallace felt that Collins depression and anger were issues and he would consider increasing antidepressants.  (*Id.*)

On December 9, 2014, Collins was referred for a clinical psychological evaluation with Bruce Jacobson, M.A., L.L.P.  (*Id.* at PageID.544-554.)  Collins explained that he took an antidepressant and felt sad most of the time.  (*Id.*)  He stated that his life was ruined in 2000 after he was charged with physical abuse as a certified nurse's assistant.  (*Id.*)  Collins reported that he injured his eye at a young age and believes that he is approximately 80% blind in the right eye.  Collins reported that he left his grocery store employment after he was treated unfairly.  (*Id.* at PageID.547.) Collins explained that he was previously convicted of possession of marijuana, retail fraud, twice for drunk driving, and served jail time for violating his parole.  (*Id.*)  His future goal was to obtain social security disability benefits.  (*Id.* at PageID.548.)  He said that he spends his free time going to AA meetings, singing with a church choir, and watching television.  (*Id.*)

Johnson determined that Collins was pleasant, cooperative, "in good contact with reality," but anxious.  (*Id.* at PageID.549.)  Johnson concluded that Collins

---

[1]     The term "viral load" refers to the number of HIV particles per milliliter of blood.  https://www.healthline.com/healthy/hiv-aids/cd4-viral-count#viral-load.

possessed the intellectual ability to understand, complete, and carry out moderately complex job tasks consistent with his past employment, and had "low grade chronic depressive symptoms along with mild to moderate symptoms of anxiety." (*Id.* at PageID.552.)  Psychologist Margaret Cappone, Ph.D., co-signed the report.  (*Id.* at PageID.554.)

On December 17, 2014, Dr. Wallace noted that Collins was taking Truvada, Sustiva, Celexa, and Lipitor, and was doing "much better."  (ECF No. 7-11, PageID.604.)  Collins's viral load was at 351 and his CD4 count was stable at its highest level in some time and gradually climbing.[2] (*Id.*)  Dr. Wallace noted that he discussed disability paperwork with Collins and that he would indicate that Collins's HIV was not well controlled, but his anxiety/depression was better.  (*Id.*)

During medical visits in January, March, and May of 2015, Collins complained of incontinence. (*Id.* at PageID.594-618.)  Dr. Wallace noted that incontinence was a possible side-effect of Collins's medications.  (*Id.* at PageID.607, 610.)  Collins's viral load dropped to 84 in January, down from 350, and his CD4 count rose to 1072 from 900.  (*Id.* at PageID.610.)

In December of 2015, Dr. Wallace reported a drop in Collins's CD4 cell count to 760 and an increase in his viral load to 539.  (*Id.* at PageID.639.)  During a February 2016 follow-up appointment, Dr. Wallace noted that Collins's viral load count had been detectable for a couple of years and was now consistently over 200.

---

[2]    HIV attacks CD4 cells.  A CD4 count between 500-1,600 reflects a healthy immune system.    https://www.healthline.com/healthy/hiv-aids/cd4-viral-count#cd-count.

(ECF No. 7-12, PageID.662.)  Collins insisted that he was taking his medications. (*Id*.)  Dr. Wallace was considering starting Collins on a new medicine regime.  (*Id*.) In March of 2016, Dr. Wallace noted that Collins medicines were changed to Truvada, Darunavir, and Ritonavir approximately two weeks ago.  (*Id*. at PageID.668.)  Even before the start of the new treatment, Collins viral load had dropped to 88, which Dr. Wallace felt was an indication that Collins was not regularly taking his medication. (*Id*. at PageID.669.)  In April and May, Collins viral load declined to 45 and his medications were working well.  (*Id*. at PageID.671, 673.)  Collins reported that his depression was under control.  (*Id*. at PageID.677.)  In December 2016, Collins was doing better and did not want antidepressant medication.  Collins believed that his depression was a reaction to his anger at how he was treated at the grocery store and that the passage of time has made it much better.  (*Id*. at PageID.685.)  Collins viral load in December was still good at 109.  (*Id*. at PageID.687.)

A state agency psychologist, Dr. Barbra Jones Smith, opined that Collins's affective disorder did not restrict his daily activities and that he had no episodes of decompensation, and mild difficulties with social functioning and maintaining concentration, persistence, or pace.  (ECF No. 7-3, PageID.101-107, 114-120.)

State agency physician, Dr. Nelson, opined that Collins was not disabled based upon his medical conditions and that he had the RFC to perform medium duty work. (*Id*. at PageID.106-10, 119-23.)

## ALJ's Decision

Generally, the ALJ must employ a five-step sequential analysis to determine whether the claimant is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520; *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). At step one, the ALJ determines whether the claimant can still perform substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant's impairments are considered "severe." 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ determines whether the claimant's impairments meet or equal a listing in 20 C.F.R. part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). Before proceeding to step four, the ALJ determines the claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). At step four, the ALJ determines whether the claimant has the RFC to still perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). At step five, after considering the claimant's RFC, age, education, and work experience, the ALJ determines whether a significant number of other jobs exist in the national economy that the claimant can perform. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines the claimant is not disabled under any step, the analysis ceases and the claimant is declared as not disabled. 20 C.F.R § 404.1520(a)(4).

The claimant has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant

number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

Addressing step 1, the ALJ found that Collins had not engaged in substantial gainful activity since September 2, 2014. (ECF No. 7-2, PageID.44.) At step 2, the ALJ then found that Collins had two severe impairments: HIV and low vision. (*Id.*) The ALJ determined that Collins's obesity, mild chronic obstructive pulmonary disease, and mild impairment of an affective disorder were not severe, but considered these impairments in determining Collins's RFC.

At step 3, the ALJ determined that Collins did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. part 404, Subpart P, Appendix 1. In making this conclusion, the ALJ found that Collins's low vision impairment did not meet the listings under 2.02 (loss of central visual acuity), 2.03 (contraction of the visual fields in the better eye), and 2.04 (loss of visual efficiency), and that his HIV failed to meet the requirements of Listing 14.07 (immune deficiency disorders, excluding HIV infection).

Prior to addressing step 4, the ALJ determined that Collins had the RFC to perform medium work with the following limitations:

> The claimant can never climb ladders, ropes or scaffolds. The claimant can only preform work that can be done by a person who is legally blind in one eye. The claimant can never work around unprotected heights or moving mechanical parts. In addition to normal breaks, the claimant will be off task less than 10 percent of the time in an 8 hour-hour workday.

(*Id.* at PageID.48.)

The ALJ noted that Collins was being treated for HIV by Dr. Wallace.  The ALJ cited Dr. Wallace's observation that Collins had good results when he was taking his medication and his HIV was under control.  (*Id*. at PageID.49.)  The ALJ also mentioned Dr. Wallace's observation that Collins experienced side effects from his medication, including diarrhea, that Collins was legally blind with severe low vision in his right eye and needed reading glasses for his left eye.  (*Id*. at PageID.50.)

The ALJ also cited to opinion evidence from Dr. Robert Nelson, M.D., a state agency medical consultant, who noted that Collins could frequently lift and/or carry 25 pounds and occasionally lift and/or carry 50 pounds.  (*Id*.)  Collins could sit for 6 out of an 8-hour workday and stand or walk for 6 out of an 8-hour workday.  (*Id*.) Collins left eye vision impairment was manageable with the aid of reading glasses. (*Id*.)  The ALJ accorded "great weight" to the opinion of Dr. Nelson, because his opinion was based on objective medical evidence reflecting that Collins's HIV was well-controlled and asymptomatic with medication compliance, and because Nelson's opinion was consistent with evidence showing that Collins's left eye vision was corrected and his diplopia was manageable.  (*Id*.)

The ALJ also noted that Collins engaged in daily activities that tended to establish that he is not disabled, such as caring for his personal hygiene, preparing his own meals, performing household chores, driving, shopping, paying bills, managing his bank account, walking up to 3 miles once or twice daily, biking up to 3 miles once per day, and participating in a church choir.  (*Id*. at PageID.49-51.)

At step 4, the ALJ found that Collins could perform past relevant work as a bakery manager, bagger, and store laborer.  (*Id.* at PageID.52.)  Based on this conclusion, the ALJ did not need to address step 5.  Nevertheless, the ALJ provided an alternative determination relating to step 5, concluding that Collins could perform work such as a janitor/cleaner (with 935,000 jobs in the national economy), and as a production helper (with 185,000 jobs in the national economy.)  As a result, the ALJ determined that Collins was not considered disabled under Social Security Administration rules.  (*Id.* at PageID.52-53.)

## Discussion

Collins raises several errors for this Court's review.  Collins argues that the ALJ (1) failed to fully consider his HIV and mental health condition and consider Listings 14.00 (Immune System Disorders) and 12.04 (Affective Disorders), (2) failed to afford the proper weight to the opinions of Dr. Wallace and psychologist Tonya Acker-Richards, (3) failed to properly consider his residual functional capacity in determining that he was able to perform work, and (4) failed to consider both his passive nature when seeking medical treatment and his poor legal representation during the administrative proceeding.[3]  Collins requests that the Court reverse or remand this matter to the Commissioner for further consideration.

---

[3]     Collins raised new issues for the first time in his reply brief.  The Court could find that Collins waived those issues by not raising them in his complaint or initial brief.  Nevertheless, this recommendation addresses those arguments and concludes that they lack merit.

### 1. Medical Listings

Collins argues that his impairments or combination of impairments meet the Listings for both Immune System Disorder and Affective Disorders. The ALJ disagreed. Under step 3 of the 5-step sequential evaluation process, the ALJ determines whether the claimant "is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations," at which time the claimant would be found disabled without having to consider vocational factors. *Newsome v. Comm'r of Soc. Sec.*, 528 F. Supp. 2d 733, 738 (W.D. Mich. 2007) (citing *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 538 (6th Cir. 2007)). "Because satisfying the listings yields an automatic determination of disability . . . the evidentiary standards for a presumptive disability under the listings are more strenuous than for claims that proceed through the entire five-step evaluation." *Peterson v. Comm'r of Soc. Sec.,* 552 F. App'x. 533, 539 (6th Cir. 2014).

The ALJ should consider a medical listing if the record raises a substantial question as to whether the claimant could qualify as disabled under the listing. *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013) (citing *Abbot v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)). It is the claimant's burden to establish that his impairments meet or equal a listing. *Evans v. Sec'y of Health & Human Servs.,* 820 F.2d 161, 164 (6th Cir. 1987). Where the ALJ makes findings elsewhere in the decision supporting the conclusion that the claimant did not meet a listing, the Court may affirm the decision because an ALJ need not "spell out every fact a second

14

time." *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006).  The ALJ's step three findings may be upheld where there are "factual findings elsewhere in his decision to support his conclusion." *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014).  An impairment that meets only some of the criteria set forth in a listing does not satisfy the claimant's burden to demonstrate disability under that listing.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

The ALJ specifically found that Collins did not meet or equal the impairment in Listing 14.07 (Immune deficiency disorders, excluding HIV infection).  This conclusion is supported by substantial evidence.  The ALJ considered the medical evidence and concluded that Collins's impairments did not meet or equal the requirements of Listing 14.07A, B or C.  (ECF No. 7-2, PageID.48.)  Specifically, the ALJ noted that the medical record did not establish that Collins had sepsis, meningitis, pneumonia, septic arthritis, endocarditis, or sinusitis that was resistant to treatment or required hospitalization or intravenous treatment 3 or more times in a 12-month period (Listing 14.07A), a stem cell transplant (Listing 14.07B), or repeated manifestations of an immune deficiency disorder with severe fatigue, fever, malaise, or involuntary weight loss, and a marked limitation in daily activities (Listing 14.07C).  Collins has failed to show that these conclusions were erroneous.  Moreover, the ALJ's conclusion is consistent with Dr. Wallace's assessment that Collins's HIV was asymptomatic.  (ECF No. 7-10, PageID.533.)  In the opinion of the undersigned, the ALJ properly considered the medical record and Collins's own testimony regarding his daily activities.   The ALJ's conclusion that Collins's

impairments do not meet or equal Listing 14.07 is supported by substantial evidence. Collins has failed to show that he meets or equals any of Listings under section 14.00.[4]

Collins argues that his impairments meet or equal Listing 12.04 (Depressive, bipolar and related Disorders).  Although, the ALJ did not specifically consider this listing, the ALJ explained in detail why Collins's affective disorder was non-severe and did not cause more than a minimal limitation on his ability to perform basic work activities.  (*Id*. at PageID.45-47.)  The ALJ considered four broad categories of mental health functioning, commonly known as the "paragraph B" criteria.  The ALJ included numerous citations to the medical evidence in concluding that Collins had either mild or no limitations under the paragraph B criteria.  Collins has failed to point to other evidence in the record showing that this conclusion was erroneous. Although, Collins points to examples as to how he meets the symptoms of depressive disorder, he fails to show how he meets the Listing by pointing to medically documented evidence.  In the opinion of the undersigned, Collins has failed to set forth medical evidence that could establish that he meets this listing.

In the opinion of the undersigned, the ALJ set forth substantial evidence that supports a finding that Collins could not meet Listings under section 14.00 or Listing 12.04.  The ALJ pointed to specific evidence in the medical record that demonstrate

---

[4]     Collins does not specifically address or explain how he meets or equals any of the requirements within the Listings for Immune System Disorders.  Listings 14.00-14.11.

that Collins's HIV status was well controlled with medicine and that his mental impairments only caused mild limitations and were not severe.

### 2. Opinion Evidence

Collins asserts that his only medical proof of disability are the opinions of Dr. Wallace and Acker-Richards that he cannot perform full-time work due to the severity of his condition. Collins argues that the ALJ erred by discounting these opinions and determining that he could return to full-time employment. Dr. Wallace filled out a Medical Opinion form and checked the box indicating that Collins could not work a full-time job, 8 hours per day, five days per week. (ECF No. 7-2, PageID.97.) Similarly, Acker-Richards filled out Medical Opinion form and checked the box indicating that Collins could not work a full-time job, 8 hours per day, five days per week. (*Id*. at PageID.98.)

Generally, a treating physician's medical opinion is entitled to great weight when evaluating a patient's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). The ALJ must give controlling weight to a treating physician's medical opinion when (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). If an ALJ affords less than controlling weight to a treating source's opinion, the ALJ must provide "good reasons" for discounting the opinion. *Id.* at 376. The reasons must be "supported by the evidence in the case record, and must be sufficiently specific to

17

make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*

An ALJ is not bound by conclusory statements of doctors, particularly where they appear on "check-box forms" without explanations citing detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Hernandez v. Commr*, No. 1:14-cv-958, 2015 WL 3513863, at * 5 (W.D. Mich. June 4, 2015). "Form reports in which a doctor's obligation is only to check a box, without explanations of the doctor's medical conclusions are weak evidence at best." *Smith v. Commr*, No. 13-cv-12759, 2015 WL 899207, at * 14 (E.D. Mich. Mar. 3, 2015); *see also Ashley v. Commr*, No. 1:12-cv-1287, 2014 WL 1052357, at * 8 n.6 (W.D. Mich. Mar. 19, 2014) ("Courts have increasingly questioned the evidentiary value of 'multiple choice' or 'check-off' opinion forms by treating physicians[.]").

As an initial matter, the medical evidence and Collins's daily activities fail to establish that Collins is unable to perform full time work.  As previously addressed, the ALJ set forth specific reasons relating to Collins's mild mental impairments. Collins has only a mild limitation in his ability to understand, remember, and apply information. (ECF No. 7-2, PageID.45.)  Collins has a mild limitation in interacting with others because he reported that he did not like being around others. (*Id.*)  Collins engages in grocery shopping every other day, participates in a church choir with weekly practices, attends AA twice per week, visits friends, and claims that he is easy to get along with. (*Id.*)  The ALJ found that Collins had a mild limitation in concentration, persistence, and pace, and no limitation in managing himself. (*Id.* at

18

PageID.46.)  This opinion is consistent with the findings of state agency psychological consultant Barbara Smith Jones, Ph.D.  (*Id.*)

The ALJ assigned "little weight" to the opinion of Acker-Richards and then outlined four reasons for this conclusion.  (*Id*. at PageID.47.)  Specifically, the ALJ noted that Acker-Richards's opinion (1) was inconsistent with Collins's activities of daily living, (2) was contradicted by his performance during the consultative examination, (3) was based only upon a short treatment history, and (4) was contradicted by treatment notes and the consultative examination.  The ALJ's opinion includes multiple citations to the medical records, and Collins has failed to set for other evidence showing that the ALJ's decision was erroneous.

Similarly, Dr. Wallace's opinion that Collins could not engage in full-time work (*see* ECF No. 7-2, PageID.97) is not supported by the medical evidence and treatment notes.  Dr. Wallace – who is an infectious diseases physician – treated Collins primarily for his HIV.  In completing a Medical Opinion form in December 2016 (*id.*), Dr. Wallace noted that Collins could not work a full-time job.  But then Dr. Wallace noted that Collins's abilities to stand, walk, sit, lift and carry were not limited.  Dr. Wallace also noted that Collins's HIV was not well controlled.  But this information contradicted his earlier assessment that Collins's HIV was asymptomatic.  (ECF No. 7-10, PageID.486.)    The medical record shows that Dr. Wallace's treatment was effective in controlling Collins's HIV and that he responded well to medication.  Moreover, Collins reported that his depression and anxiety were reactive to the way he was treated by his supervisors at his past job, and that he was doing much better

as of December 2016. (ECF No. 7-12, PageID.685) Thus, the ALJ was justified in according little weight to Dr. Wallace's opinion that Collins could not work a full-time job.

It is the opinion of the undersigned that substantial evidence exists in both the medical record and in Collins's testimony regarding his daily activities to support the ALJ's opinion that Collins has the RFC to maintain full time employment.

### 3. RFC

Collins argues that he can no longer work and that the ALJ erred in determining that he maintained the RFC to perform his past work. In addition, Collins argues that he is unable to find employment relevant to his college degree, or other employment due to his poor vision and HIV status.

In determining Collins's RFC for medium level work, the ALJ considered that he is legally blind in one eye, his HIV status, his mental impairments, and his daily activities. Collins asserts that he is a liability for some employers due to his limitations. The ALJ took his impairments into account by placing limitations on Collins's ability to perform some work. Collins has not shown that the ALJ's RFC analysis was incorrect. In the opinion of the undersigned, substantial evidence supports the RFC analysis and the limitations imposed by the ALJ. The ALJ found that based upon the testimony of the vocational expert (VE), Collins could perform both his past work and a significant number of alternative positions that are available in the national economy.

Collins has not explained how the ALJ's RFC finding was erroneous or set forth the basis for any alternative finding.  Accordingly, it is the opinion of the undersigned that the ALJ's RFC finding is supported by substantial evidence in the record.

### 4. Other Factors

Collins asserts that his passive nature caused him not to seek medical care at times, that his disability attorney provided poor assistance of counsel at the administrative level, and that his past work history eliminated him from being considered for social work positions.  Collins argues that these factors should be taken into to account in determining whether he is employable.

Although the Court is sympathetic to Collins's situation, the Court must limit its review to the standard of review set forth above.  In the opinion of the undersigned, Collins has not shown that the objective medical evidence supports a finding of disability under Social Security rules.  In addition, Collins has not established that counsel made any errors or that the record is not complete.  Finally, the fact that Collins may not have successfully obtained employment in the social work field because of a prior abuse allegation does not support a finding of disability for social security purposes.

### Recommendation

The record shows that Collins's HIV was under control at all times relevant to this appeal, that his vision, although limited, still allowed him to drive a car and was not debilitating, and that his mental health issues presented only mild limitations. Furthermore, the record shows that the ALJ applied the correct procedural rules and

that his decision is supported by substantial evidence.  Therefore, I respectfully recommend that the Commissioner's decision be affirmed and that the Court dismiss this case.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:  August 30, 2019                              /s/ *Maarten Vermaat*
                                                      Maarten Vermaat
                                                      U. S. MAGISTRATE JUDGE